UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN BRIONES,<br><br>Plaintiff,<br><br>v.<br><br>CORIZON HEALTH SERVICES, *et. al.*,<br><br>Defendants. | Case No. 1:14-cv-00366-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment of Christian Gelok, NP-C and William Poulson, NP-C (Dkt. 20), Plaintiff's Motion for Summary Judgment (Dkt. 20), and Plaintiff's Motion for Appointment of Counsel (Dkt. 26).

## LEGAL STANDARD

**1.      Cross Motions for Summary Judgment**

Briones complained of elbow pain while incarcerated at the Idaho State Correctional Institution. He claims that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, in the form of deliberately indifferent medical care. Following initial review, the Court allowed Briones's claims to proceed against Gelok and Poulson. Each party has now moved for summary judgment.

MEMORANDUM DECISION AND ORDER - 1

2.   **Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing

evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party

**MEMORANDUM DECISION AND ORDER - 3**

opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

3.     **Standard of Law for Eighth Amendment Claims**

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir.2012). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Ninth

**MEMORANDUM DECISION AND ORDER - 4**

Circuit has defined a "serious medical need" as a "failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain [;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . ." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992) (internal citations omitted), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc).

As to the subjective standard, a prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004) (quoting Farmer, 511 U.S. at 837, 114 S.Ct. 1970). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). However, "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842,

MEMORANDUM DECISION AND ORDER - 5

114 S.Ct. 1970; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir.2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285 (footnotes omitted). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.2004) (alteration omitted) (*quoting Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996)). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980) (per curiam). A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at

**MEMORANDUM DECISION AND ORDER - 6**

1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is appropriate. *Toguchi*, 391 F.3d at 1061.

## ANALYSIS

The Court has cross-motions for summary judgment before it. However, Briones's motions is nothing more than a 3-page bare bones assertion that his rights have been violated. He makes nothing more than a blanket assertion that his medical needs have not been met. This is not enough to support summary judgment. Accordingly, the Court will deny Briones's motion and address defendants' motion in more detail.

Briones first notified defendants about his elbow problems on December 10, 2013. He was seen that day by Will Wingert, R.N. Poulson Aff., ¶ 3. Briones told Wingert that he had elbow pain since 2012. *Id.* Wingert conducted a physical examination, and prescribed cold and warm compresses, Ibuprofen from the commissary, and referred Briones to a nurse practitioner. *Id.*

NP Poulson saw Briones on December 30, 2014. *Id.* at ¶ 4. Briones discussed his pain with Paulson, noting that it had begun in August 2012. Poulson performed a physical examination, and noted that Briones's right elbow was tender to palpation at the medial epicondyle and that the pain increased with resisted forearm pronation. He noted no swelling or crepitation. Poulson noted that Briones's left elbow was tender at the olecranon bursa, and that it appeared to be mildly swollen. Poulson prescribed a course of oral prednisone and advised Briones to rest and limit his activities. Poulson conditionally

**MEMORANDUM DECISION AND ORDER - 7**

prescribed a Kenalog injection for the left elbow. No fluid was aspirated from Briones's left elbow because there was no significant swelling or signs of infection. *Id.*

On January 6, 2014, x-rays were performed on Briones's left elbow. *Id.*, ¶ 5. The radiologist's impression was "negative left elbow." *Id.* On January 14, 2014, Briones was seen by Nurse Practitioner Scott Schaffer, who administered the Kenalog injection in the left elbow. *Id.* On February 8, 2014, Briones reported that his left elbow was still painful following the Kenalog injection. *Id.*, ¶ 7. Briones asked for additional care. On February 21, 2014, Briones was given another Kenalog injection by NP Schaffer. *Id.*, ¶ 8.

Briones next complained about pain on July 7, 2014, when he asked for another shot. *Id.*, ¶ 9. On July 21, 2014, Briones was seen by Nurse Practitioner Christian Gelok. After examining Briones, NP Gelok diagnosed him with medial epicondylitis. *Id.* NP Gelok's treatment plan for Briones was to decrease lifting weights. He also offered a brace for the elbow, but Briones declined use at that time. NP declined another steroid injection because he had already had two injections that year. Gelok Aff. ¶ 3. Excessive steroid injections within a relatively short period of time present a risk for tendon damage, including rupture. Poulson Aff. ¶ 9; Gelok Aff. ¶ 3. This risk is increased for a patient who, after receiving the injection, engages in vigorous activity affecting the joint. *Id.* The results of NP Gelok's examination suggested that Briones's pain was associated with vigorous activities, such as weight lifting, and that what he really needed to do was rest his elbow. *Id.*

Briones was next seen by Dr. Murray Young on September 10, 2014 for his complaint of left elbow pain. Poulson Aff. ¶ 11. After conducting various tests that were

**MEMORANDUM DECISION AND ORDER - 8**

essentially normal, Dr. Young's assessment was that Briones had musculoskeletal left elbow pain - tendonitis. Dr. Young prescribed the NSAID Mobic (Meloxicam) for 90 days because Briones indicated that ibuprofen bothered his stomach. Dr. Young also prescribed an elbow sleeve and instructed Briones to reduce his weight lifting. Dr. Young noted that surgery was not indicated and that his condition was one that comes and goes over time.

Briones filed his complaint on September 2, 2014. The record before the Court, including medical records, does not show that Briones submitted any additional requests for care after his visit with Dr. Young on September 10, 2014. Poulson Aff. ¶ 12. Uncontested evidence before the Court indicates that the primary treatment for soft tissue complaints such as those expressed by Briones is to rest the elbow so that it can heal. *Id.*, ¶ 17; Gelok Aff. ¶ 6. It takes time to heal, and healing may be delayed when the elbow is aggravated. Gelok Aff., ¶ 6. Given the facts above, the only reasonable conclusion is that defendants were not deliberately indifferent to Briones's medical needs. That Briones disagrees with his medical care, which is essentially what he states in his brief, is not sufficient medical evidence that he should have been treated differently. Thus, defendants have met their initial burden of demonstrating the absence of a genuine dispute as to material fact that they were not deliberately indifferent to Briones's medical needs. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). They have introduced evidence, through affidavits, which has not been rebutted by Briones. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000). Accordingly, the Court will grant summary judgment for defendants.

**MEMORANDUM DECISION AND ORDER - 9**

## ORDER

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment of Christian Gelok, NP-C and William Poulson, NP-C (Dkt. 20) is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (Dkt. 20) is **DENIED**.

3. Plaintiff's Motion for Appointment of Counsel (Dkt. 26) is **DENIED**.

4. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: September 21, 2016

B. Lynn Winmill
Chief Judge
United States District Court